Richard Dean THORBUS

v.

Dr. George J. BETO, Director, Texas
Department of Corrections.

No. SA–70–CA–323.

United States District Court,
W. D. Texas,
San Antonio Division.

Sept. 17, 1971.

Stewart J. Alexander, San Antonio, Tex., for petitioner.

Crawford C. Martin, Atty. Gen. of Texas, Larry J. Craddock, Asst. Atty. Gen., Austin, Tex., for respondent.

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

SUTTLE, District Judge.

On the 27th day of August, 1971, came on for consideration and hearing the above styled and numbered Petition for Writ of Habeas Corpus, and the Court, having considered the Petition, Respondent's Answer thereto, Petitioner's Reply and Briefs in support thereof, comments of counsel, and evidence adduced at the hearing, finds and rules as follows:

In presenting his claim to the convicting Court and the highest appellate Court in the State, petitioner has exhausted his state remedies.[1] The constitutional questions here raised are properly before this Court,[2] and the Motion to Dismiss is, in all things, denied, and it is so ordered.

Petitioner is in custody serving a life sentence upon a verdict of guilty to Murder With Malice, no motion for new trial having been filed.[3] Notice of appeal was given and the appellant was granted 90 days from the date of sentence to prepare and have filed a statement of facts and bills of exception. On August 1, 1951, 89 days later, petitioner filed a pauper's oath and requested a statement of facts without cost because he was without funds to perfect an appeal. The record does not reflect that such pauper's oath was ever called to the trial judge's attention or that any order concerning the same was ever entered. However, the record contains a filed statement of the Court Reporter regarding the short time within which he had to prepare the statement of facts, certifying that failure to prepare a statement of facts had not been due to his negligence or default, but that he would

1. Brown v. Allen, 344 U.S. 443, 448, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

2. Sanders v. United States, 373 U.S. 1, 18, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).

3. State v. Thorbus, Crim. No. 51,991, Crim.Dist.Ct. of Bexar County, May 4, 1951.

prepare the same for approval and transmission to the Court of Criminal Appeals as soon as possible. No such statement of facts was ever transcribed or delivered to the Court of Criminal Appeals. On October 31, 1951, the Court of Criminal Appeals affirmed the conviction with but one bill of exception and no statement of facts before it.[4]

At trial petitioner was represented by two retained attorneys, Marcus Kirkland and Grant W. Smith. Kirkland expressly removed himself from appeal of the case by letter of October 4, 1951. The record is silent as to what actions Attorney Smith took in representing petitioner on appeal. The last act of record performed by Smith was an affidavit filed August 2, 1951 that Smith had been unable to contact the trial judge for approval of his first bill of exception in the case. On November 25, 1951, petitioner stated in a letter to Judge Beauchamp of the Texas Court of Criminal Appeals that Smith sent the records in the case to be reviewed by the Court, but made no oral argument in the case on appeal. Attorney Smith was disbarred June 4, 1952.

In a series of letters sent to Judge Beauchamp between November 7th and December 3rd, 1951, petitioner filed a pro se motion for rehearing in the case. Petitioner advised the Court of Criminal Appeals that (1) he had no lawyer; (2) he had no money with which to hire a lawyer; (3) he desired a rehearing in his case to show that the denial of a motion for continuance at his trial was prejudicial in that he was unable to obtain his army medical records in time

for use as proof of his mental condition at the time of the crime; and (4) he was deprived of a fair trial because of the publicity and adverse public sentiment in his case. The Court of Criminal Appeals denied rehearing December 12, 1951.

On August 20, 1969, petitioner filed a writ of habeas corpus in the Court of Criminal Appeals alleging, *inter alia,* the ineffective assistance of counsel at trial and on appeal, and the deprivation of a statement of facts on appeal. The Court of Criminal Appeals reviewed the Petition and ordered an evidentiary hearing in the convicting court. At the hearing the trial judge found that no statement of facts was ever transcribed in the case; that the court reporter and the presiding judge were deceased and no means existed whereby such statement of facts could be reproduced, thus rendering an out of time appeal impossible. He concluded that the application for writ of habeas coupus should be granted.[5] On review of the trial court's findings of fact and conclusions of law pursuant to Texas Code Crim.Proc.Ann. art. 11.07 (Supp.1970), the Texas Court of Criminal Appeals disagreed and denied the Writ on the ground that petitioner was not entitled to post conviction relief because he was denied a statement of facts on appeal.[6]

On August 26, 1970, petitioner filed the present Petition for Writ of Habeas Corpus in this Court seeking discharge from confinement upon the following peal; and (2) denial of a statement of facts for the purpose of appeal.[7]

4. Thorbus v. State, 243 S.W.2d 840 (Tex. Cr.App.1951).

5. Ex Parte Thorbus, No. 10,443, Dist.Ct. of Bexar County, 144th Judicial Dist. of Texas, Feb. 24, 1970.

6. Ex Parte Thorbus, 455 S.W.2d 756 (Tex. Cr.App.1970).

7. A third ground alleged denial of due process of law because Tex.Code Crim. Proc.Ann. art. 11.07 (Supp.1970) requires that the trial court's findings of fact and conclusions of law be reviewed by the

Texas Court of Criminal Appeals. The parties, however, did not argue this ground at the hearing.

Petitioner also contended that his retained counsel was so ineffective at trial and in connection with a meaningful appellate review as to amount to an unconstitutional denial of counsel. The law in the Fifth Circuit on this issue is unsettled. One case adopted the majority view that no distinction should exist between appointed counsel and retained counsel, arguing that the test should be not wheth-

### I.

■ The question is now well established that an indigent is entitled to be represented by court appointed counsel on his first appellate review through the courts under the Sixth and Fourteenth Amendments,[8] and that this right has been applied retroactively.[9] The rule is established in the Fifth Circuit that where the petitioner was represented by retained counsel at the trial, there are two prerequisites in showing denial of counsel for purposes of appeal: "First, it must be known to the court that the criminal defendant is indigent. Second, it must be known to the court that the defendant wishes to appeal."[10]

First, the documents and letters filed in connection with this cause establish petitioner's indigence at the time of his first appeal. Petitioner's pauper's oath was filed with the trial court on August 1, 1951, within the 90 days he had to secure his appeal. In addition, petitioner's indigency was acknowledged by the official shorthand reporter in his verified statement filed with the Court in reference to his preparation of the statement of facts. Finally, petitioner's letter of November 22, 1951, to Judge Beauchamp of the Texas Court of Criminal Appeals aptly explains that he had no further assets after he paid his trial attorney "my auto valued at $600 and $65 in cash also which left me without a penny in this world." Second, petitioner manifested his desire to appeal when he filed his pauper's oath and requested a statement of facts.

■ The question remains whether the trial Court had notice of petitioner's indigency and desire to appeal so that the Court's failure to appoint counsel amounted to unconstitutional state action in violation of the 14th Amendment to the United States Constitution. The conclusions seem inescapable that the trial Court had knowledge of these matters. Filing of the pauper's oath and requesting a statement of facts "at no

---

er the state denied the effective assistance of counsel, but whether defendant was denied a fair trial because he did not have adequate representation. Another case adopted the minority view, argued by the state in this case, that petitioner should be bound by the acts of his retained counsel unless state action outwardly prevents counsel from performing his duties. *See* Breen v. Beto, 421 F.2d 945, 948 n. 1 (5th Cir. 1970); Breedlove v. Beto, 404 F.2d 1019, 1020 n. 1 (5th Cir. 1968); Robinson v. Henderson, 316 F. Supp. 1241 (E.D.La.1970). *But see* McGriff v. Wainwright, 431 F.2d 897, 899 (5th Cir. 1970).

Because of the disposition of this case on other grounds, it is unnecessary to decide these issues.

8. Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967); Breen v. Beto, *supra*, 421 F.2d at 947.

9. McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Breen v. Beto, *supra*.

10. Beto v. Martin, 396 F.2d 432, 434 (5th Cir. 1968). *See e. g.*, Breaux v. Henderson, 417 F.2d 466 (5th Cir. 1971); Gregory v. United States, 446 F.2d 498 (5th Cir. 1971); Giles v. Beto, 437 F.2d 192, 194 (5th Cir. 1971); Langford v. Alabama, 422 F.2d 760 (5th Cir. 1969); Goforth v. Dutton, 409 F.2d 651 (5th Cir. 1969); Worts v. Dutton, 395 F.2d 341 (5th Cir. 1968); Harris v. Beto, 392 F.2d 191 (5th Cir. 1968); Pate v. Holman, 341 F.2d 764 (5th Cir.), modified 343 F.2d 546 (5th Cir. 1965). Judge Onion of the Texas Court of Criminal Appeals also approved of this view. Ex Parte Breen, 420 S.W.2d 932, 939 (Tex. Cr.App.1967) (Onion, J., Dissenting).

There is some difference of opinion among the Circuits as to whether the trial judge has a duty to advise all defendants, both indigent and those with retained counsel, of their right to appeal. The Fifth Circuit, of course, is committed to the view that the Court does not have that duty, and thus must be aware of defendant's indigence and desire to appeal. However, recently, several Circuits which previously followed the reasoning adhered to by the Fifth Circuit have reversed themselves. *See* United States ex rel. Singleton v. Woods, 440 F.2d 835 (7th Cir. 1971); Goodwin v. Cardwell, 432 F.2d 521 (6th Cir. 1970); United States ex rel. Smith v. McMann, 417 F.2d 648 (2d Cir. 1969).

cost to me" clearly conveyed the idea that petitioner was indigent and desired to appeal. In Texas, the trial Court may take judicial notice of its own records.[11] In a similar case where retained counsel attempted to withdraw from a federal criminal case, leaving the indigent defendant to proceed in forma pauperis, the Supreme Court of the United States through Justice Marshall stated:

> Counsel's attempt to obtain leave for petitioner to proceed *in forma pauperis* should have put the trial judge on notice that petitioner would be unrepresented in the future. Moreover, unless an appeal was contemplated, there would be no reason to make such a motion.[12]

Finally, the rationale for the rule that the Court must have knowledge of petitioner's indigency and desire to appeal rests upon the requirement that some state action should have deprived petitioner of his right to counsel on appeal. The Fifth Circuit has now broadened the rule so that the requisite state action is shown if any responsible state official has knowledge of petitioner's indigency and desire to appeal.[13] The letters mailed to Judge Beauchamp which are on file in the records of the case are enough to satisfy this requirement.

## II.

Petitioner's contention that he was unconstitutionally denied a statement of facts for the purpose of appeal also has merit. Although the Federal Constitution does not require that a defendant be given an appellate review as a matter of right, where an appellate review is provided it must be administered in such a way as not to discriminate against some defendants because of their poverty. Therefore, an indigent is entitled to an appeal with a transcript of the proceedings.[14] The applicable law is stated as follows:

> If during the appeal from his conviction [petitioner] was indigent and his indigency prevented him from obtaining a transcript of his trial proceedings and the lack of such transcript prevented him from receiving an adequate appellate review, then he is imprisoned in violation of the Fourteenth Amendment.[15]

In this case petitioner established his indigency and desire to appeal to the knowledge of a responsible state official. There is evidence that the statement of facts was needed to show the circumstances surrounding the denial of the motion for continuance. Other overt errors might also have been shown by the statement of facts. Upon the motion for

11. *See* Horman v. State, 423 S.W.2d 317 (Tex.Cr.App.1968) ; Armstrong v. State, 120 Tex.Cr.R. 526, 46 S.W.2d 987 (1932) ; Baker v. State, 79 Tex. 510, 187 S.W. 949 (1916).

12. Rodriguez v. United States, 395 U.S. 327, 332, 89 S.Ct. 1715, 1718, 23 L.Ed. 2d 340 (1969).

13. "State action is shown when a responsible official in the State's system of justice rejects a request for counsel or fails to take proper steps toward appointment of counsel for a convicted defendant *when he has knowledge of the defendant's indigency and desire for appellate counsel.*"
McGriff v. Wainwright, 431 F.2d 897, 899 (5th Cir. 1970), quoting Pate v. Holman, 341 F.2d 764, 775 (5th Cir. 1965), and cases there cited.

14. *E. g.*, Gardner v. California, 393 U.S. 367, 89 S.Ct. 580, 21 L.Ed.2d 601 (1969) ;

Seals v. Alabama, 380 U.S. 254, 85 S.Ct. 943, 13 L.Ed.2d 818 (1965) ; Draper v. State of Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963) ; Eskridge v. Washington State Prison Board, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958) ; Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) ; Tindol v. Beto, 392 F.2d 582, 583 (5th Cir. 1968) ; Dixon v. Beto, 320 F.Supp. 1, 3 (S.D.Tex.1970) ; Annot., 21 L.Ed.2d 879, 885.

15. Medberry v. Patterson, 188 F.Supp. 557, 563 (D.Colo.1960), *aff'd* 290 F.2d 275 (10th Cir. 1961) (Citations Omitted). The *Medberry* decision was cited approvingly by the Fifth Circuit in United States ex rel. Weston v. Sigler, 308 F.2d 946, 947 (5th Cir. 1962), *cert. denied*, 372 U.S. 978, 83 S.Ct. 1110, 10 L.Ed.2d 143 (1963).

rehearing the Texas Court of Criminal Appeals was aware of the possibility of errors which might merit reversal of the conviction. The Court's ruling under these circumstances, without benefit of a statement of facts before it, as was later established by the United States Supreme Court, unconstitutionally denied this petitioner, who was unable to afford counsel to insure the transmission of the record, of an instrument needed to vindicate his legal rights.[16] The burden of proof rests with the State to prove beyond a reasonable doubt that the accused was in no way prejudiced by the absence of the transcript.[17] The State has not met this burden. Recent language of the Fifth Circuit with regard to the absence of a transcript in Federal criminal cases seems applicable here. Before absence of a transcript will be acceptable, "[i]t seems to us that the court must be able to say affirmatively that no substantial rights of the appellant were adversely affected by the omissions from the transcript; that is, it must exclude the possibility of any error other than harmless error." [18] This Court is not able to affirmatively say that the absence of a statement of facts on Thorbus's appeal was harmless error.

▮ Accordingly, this Court finds that petitioner was unconstitutionally deprived of his right to adequate appellate review through lack of a statement of facts for use on appeal coupled with denial of counsel on appeal. The usual remedy in a case of this sort would be to award the petitioner an out-of-time appeal. But in this situation, where the court reporter's notes have been either lost or destroyed and the trial was over 20 years ago, an out-of-time appeal cannot be the appropriate remedy. Therefore, in order to award the maximum relief that petitioner could have obtained if his appeal had been properly perfected, the Writ of Habeas Corpus is granted and petitioner shall be discharged, subject to the right of the State of Texas to retry him within 120 days.[19] Issuance of the writ and accordant discharge is stayed for 120 days in order to permit the State, if it so desires, to retry petitioner, and it is so ordered.

16. Roberts v. LaVallee, 389 U.S. 40, 42, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967); Griffin v. Illinois, *supra*, 351 U.S. at 16, 76 S.Ct. 585, 100 L.Ed. 891. McKee v. Page, 435 F.2d 689 (10th Cir. 1970), cited by Respondents, is inapposite here where time for appeal had not expired, but in fact was secured and taken. Nor is Mack v. Walker, 372 F.2d 170 (5th Cir. 1966), dispositive since a partial transcript containing evidence pertinent to Mack's various bills of exception was before the State appellate court on appeal and no errors were alleged which could not be shown by the transcript furnished them.

17. United States ex rel. Cadogan v. LaVallee, 428 F.2d 165, 168–169 (2d Cir. 1970) (Anderson, J., Concurring). *See* Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

18. United States v. Upshaw, 448 F.2d 1218 (5th Cir. 1971).

19. *See* Turner v. North Carolina, 412 F.2d 486, 490 (4th Cir. 1969).